IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ENVIRCO CORPORATION,

        Plaintiff,

vs.                                            CIVIL NO. 99-830 LFG/DJS

ENVIROFLEX, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

THIS MATTER is before the Court on Enviroflex, Inc.'s ("Enviroflex") Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 11]. In accord with the district's motion practice rule, the motion, response in opposition and reply were simultaneously filed. Oral argument is not necessary. This matter may be decided based on the parties' submissions.

### Background

This case arises from a claimed breach of contract between Envirco Corporation ("Envirco"), a New Mexico corporation, and Enviroflex, a California corporation. Both companies are in the business of manufacturing and distributing fan filter units for use in highly specialized technical applications, i.e., "clean rooms," pharmaceutical, medical, semi-conductor and micro-electronic manufacturing.

Enviroflex seeks dismissal of the litigation and challenges the Court's jurisdiction, stating that it is not subject to either personal or general jurisdiction. The contract which is the subject of this lawsuit was not negotiated in New Mexico, but, rather, was negotiated and signed in South Korea.

Enviroflex states, "On its face, the alleged contract does not call for any performance by Enviroflex in New Mexico." (Memorandum, p. 2). It argues that it is neither registered to do business in New Mexico nor has it done business in this state. Enviroflex states it has no employees in New Mexico. It does not own or lease property here, nor has it achieved any revenue from anyone in New Mexico. Enviroflex states it has neither sold products nor provided any services to anyone in New Mexico. Based on these assertions, Enviroflex states that the District Court may not exercise personal jurisdiction over it under New Mexico's Long Arm Statute or the Fourteenth Amendment's due-process requirement because its contacts, if any, are random, fortuitous or attenuated. It denies having taken any deliberate action toward the State of New Mexico and that the Court's exercise of jurisdiction over it would be unreasonable and contrary to the concepts of fair play and substantial justice.

**Envirco's Allegations and Exhibits**

In support of its response in opposition to the motion, Envirco provided the Court with extensive documentation outlining its course of conduct with Enviroflex, its agent Lee Technologies, Inc., and its parent corporation Shin Sung ENG Co., Ltd. ("Shin Sung").

For purposes of the Court's evaluation, the Court accepts as true the unrebutted allegations of the complaint, and to the extent the allegations are challenged by conflicting affidavits, the Court must consider only whether Envirco proffered sufficient evidence to support findings essential to personal jurisdiction. Rivera v. Bank One, 145 F.R.D. 614 (D.P.R. 1993).

Envirco represents that in February 1995, Ike ("Lee") Lee of Lee Technologies, Inc. contacted Envirco on behalf of Enviroflex. (Marmon Affidavit, ¶ 3). Lee advised Envirco and Enviroflex and Shin Sung were working on a project in the United States and were considering

Envirco as the manufacture of fan filter units for this project. (Id., ¶ 3) Lee requested Envirco's product catalog so that it could be shared with his clients, Enviroflex and Shin Sung. In accord with Lee's request, a detailed product catalog was submitted. In its letter of transmittal, Envirco accepted Lee's offer to pursue further discussions concerning a joint project. (Id., Attachment 1).

Subsequently, in the spring or summer of 1996, Lee again contacted Envirco to request a meeting in San Jose, California to continue discussions about a business relationship between Envirco, Enviroflex and Shin Sung. Envirco representatives traveled to California to pursue these discussions. (Id., ¶ 4)

During the course of discussions with Lee Technologies, Envirco became concerned that a fan filter being manufactured and sold by Enviroflex and Shin Sung for technical manufacturing projects in the United States infringed on a patent held by Envirco on a specialized fan filter unit known as the Mack 10. (Id., ¶ 5; Schlegel Affidavit, ¶3). As a result of Envirco's concerns, its attorneys, Dowell and Dowell of Arlington, Virginia, sent a cease-and-desist letter to Enviroflex demanding that Enviroflex and Shin Sung cease infringing on Envirco's patent and calling for an immediate accounting with respect to importation, manufacture and/or sale of products which violated Envirco's rights. (Schlegel Affidavit, Attachment 1). As a result of Envirco's demand, Kelly Barton ("Barton"), President of Enviroflex, contacted Envirco's President and CEO, David M. Schlegel ("Schlegel"), to discuss Envirco's concerns. During the course of the discussion, Barton indicated Enviroflex was taking Envirco's concerns very seriously and wanted to explore methods of resolving the dispute, including the potential for developing a "strategic partnership" between the two companies and developing a mutually beneficial working relationship. (Schlegel Affidavit, Attachment 2 thereto [July 2, 1996 memorandum]).

3

Subsequently, Enviroflex and Shin Sung invited Schlegel together with Envirco's President of International Operations to meet in Korea with representatives of Enviroflex, Shin Sung and Lee Technologies. (Marmon Affidavit; Schlegel Affidavit). The purpose of the meeting was to discuss Enviroflex and Shin Sung's interest in expanding operations into the United States market and to attempt to reach a settlement on the pending patent infringement matter. The parties were to explore the potential for some partnership arrangement for future ventures. At the parties' meeting in Korea, an agreement was struck concerning a settlement of the existing patent infringement concerns. (Id.) Under the terms of the agreement, Enviroflex and Shin Sung would pay Envirco a one-time royalty payment of $120,000 in exchange for Envirco's agreement not to pursue patent infringement litigation against Enviroflex and Shin Sung with respect to certain projects which Enviroflex and Shin Sung had pending in the United States. Additionally, the parties agreed that in future projects in the United States and Europe, Envirco would manufacture fan filter units needed by Enviroflex and Shin Sung for various projects. (letter of cooperation, Attachment 3, Marmon Affidavit). It is this contract that forms the subject matter of the present dispute.

Envirco's only manufacturing plant is located in New Mexico. Thus, any manufacturing of fan filter units for projects in the United States and Europe would necessarily occur in New Mexico. (Marmon Affidavit). Because of Enviroflex and Shin Sung's specific manufacturing requirements, a Shin Sung fan filter was provided to Envirco and to investigate, analyze and test. Envirco was to determine if it could manufacture the same unit. (Id.) Shin Sung's sample fan was sent to Envirco in the State of New Mexico. The first project discussed between Envirco, Enviroflex and Shin Sung was the manufacture of filter fans for a Hyundai project. (Id.) In furtherance of what was called the "Enviroflex/Shinsung project," Shin Sung sent representatives to New Mexico to discuss the

4

engineering, manufacturing and cost details. Envirco spent a significant amount of time drawing translations and building a sample fan unit for Enviroflex/Shin Sung's examination. This sample unit was shipped from New Mexico to Korea in December 1996 for further testing. (Id.; Welty Affidavit, Attachment.2). In late December 1996, an Envirco representative again traveled to Korea to meet with representatives of Enviroflex and Shin Sung for additional discussions about the specific manufacturing requirements of Enviroflex and Shin Sung. (Marmon Affidavit). To reduce manufacturing costs, the parties discussed a plan whereby Shin Sung would provide some of the components, ship them to New Mexico, and have the components included in the Envirco manufactured unit. (Welty Affidavit, Attachment 1). A follow-up trip to Korea occurred in early 1997 and was attended by Envirco representatives, including the chief engineer responsible for working on the Enviroflex/Shin Sung manufacturing project. (Marmon Affidavit).

In April 1997, Hark W. Chang, President of Enviroflex, and Wan Keun Lee of Shin Sung, visited and inspected Envirco's New Mexico facilities. In preparation for the Hyundai project, the parties agreed that Shin Sung would ship detailed drawings, part lists and provide various parts to Envirco. (Id., ¶ 9 and Attachment 4). Envirco would assemble and deliver 100 fan filter units as a "trial order." (Id., ¶ 17 and Attachment 10) On September 10, 1997, Enviroflex delivered a purchase order to Envirco in New Mexico for these 100 test units. The purchase order provides for 100 fans at a unit price of $399.50 each. (Id., Attachment 12). They were to be manufactured "per drawings and sample," packaged, boxed and shipped to Enviroflex. The purchase order was accepted on September 16, 1997 by Envirco at its facility in New Mexico and the manufactured units were to be shipped by November 14, 1997. (Id.) In preparation for this test run, literally hundreds of hours of time and tens of thousands of dollars of cost were expended by Envirco in New Mexico. (Welty

5

Affidavit; Raquet Affidavit). A multitude of facsimile exchanges between Envirco and Shin Sung ensued. However, neither Enviroflex nor Shin Sung provided the requisite parts for the 100-unit order. During Envirco's attempts to acquire the parts and information needed for the test production of 100 units, it learned that Enviroflex and Shin Sung entered into several other contracts to provide fan filter units for various projects in the United States and Europe without using Envirco for the manufacture of these units. (Schlegel Affidavit; Marmon Affidavit). Envirco contended that it was entitled to manufacture the fan units as part of its compact with Enviroflex and Shin Sung. As a result, Envirco filed suit alleging breach of contract. (Marmon Affidavit).

## **Analysis**

In <u>Doe v. Nat'l Med. Servs.</u>, 974 F.2d 143 (10th Cir. 1992), the Tenth Circuit Court of Appeals described two bases of jurisdiction, specific and general. Specific jurisdiction may be asserted if a defendant has "`purposefully directed' its activities toward the forum state, and if the lawsuit is based upon injuries which `arise out of' or 'relate to' the defendant's contacts with the state." <u>Doe v. Nat'l Med. Servs.</u> at 145. Under general jurisdiction, a non-resident defendant may be subject to a state's jurisdiction even where the alleged injury is unrelated to the defendant's contact with the forum state. If the defendant's contacts with the state are strong enough, the state may assert jurisdiction over the defendant on any matter, whether or not it arises out of the defendant's contacts with the state. For general jurisdiction, the defendant's contacts with the state must be greater than those required for specific jurisdiction. Rather than looking at a specific injury linked to particular contacts, the court looks to defendant's general contacts with the state. The court is also required to determine whether there are "continuous and systematic general business contacts" so that the

defendant could reasonably anticipate being hauled into court in that forum.  Doe v. Nat'l Med. Servs., at 145-46.

Federal courts sitting in diversity have personal jurisdiction over non-resident defendants to the extent permitted by the law of the forum.  Benally v. Amon Carter Museum of Western Art, 858 F.2d 618, 621(10th Cir. 1988).  In Visarraga v. Gates Rubber Co., 104 N.M. 143, 717 P.2d 596 (Ct. App. 1986), New Mexico's intermediate appellate court commented on the nature and quality of contacts that are sufficient to satisfy the due-process minimum contacts test under International Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154 (1945).  Essentially, the New Mexico appellate court found two ways to subject a non-resident defendant to the court's jurisdiction.  "If the activities of a non-resident entity are extensive, systematic and continuous, it may subject it to jurisdiction within this state on a cause of action unrelated to those activities."  Visarraga, 104 N.M. at 148, 717 P.2d at 601.  Under this jurisdictional approach, a defendant submits to the court's jurisdiction even when the cause of action did not arise from this specific transaction.  The Court of Appeals general jurisdiction approach in Visarraga has not been specifically adopted, modified or rejected by the New Mexico Supreme Court.  See Gonzales v. Celsius Energy Co., No. 91-1099 JC, slip op. (D.N.M. April 14, 1992).  (The doctrine has been hypothesized, but has never been confirmed in New Mexico jurisprudence.)  In the absence of an express rejection or modification of that theory by the New Mexico Supreme Court, and because this approach has been recognized by the state's intermediate appellate court, an analysis of both "specific" and "general" jurisdiction principles may apply.

To find specific personal jurisdiction over a non-resident defendant, the following factors must be met:  (1)  the defendant has committed one of the enumerated acts in the New Mexico Long Arm Statute, NMSA 1978 § 38-1-16 (1998 Repl. Pamp.); (2) the cause of action arises out of the acts

enumerated in the statute; and (3) the defendants have had the minimum contacts with the State of New Mexico necessary to satisfy the due-process clause of the United States Constitution. Beh v. Ostergard, 657 F. Supp. 173 (D. N.M. 1987); Sanchez v. Church of Scientology, 115 N.M. 660, 857 P.2d 771 (1993).

New Mexico's Long Arm Statute provides in relevant part:

> A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
>
> > (1) the transaction of any business within this state;
> > . . . .
> >
> > (3) the commission of a tortious act within this state;
> > . . . .
>
> C. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section.

NMSA 1978 § 38-1-16 (1998 Repl. Pamp.).

The specific question is whether Enviroflex has transacted any business in the state sufficient to extend New Mexico's personal jurisdiction as far as constitutionally permissible under the Due Process Clause. Benally, at 623; Wesley v. H. & D. Wireless Ltd. Partnerships, 678 F. Supp. 1540 (D.N.M. 1987). Here, Enviroflex's contacts with the forum state must be viewed in the light of due process. This requires that "the maintenance of the suit does not offend `traditional notions of fair play and substantial justice'." International Shoe, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343 (1940)).

8

In evaluating Enviroflex's contacts with New Mexico, the focus is on "the relationship among the defendant, the forum and the litigation." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775, 104 S. Ct. 1473, 1478 (1984)(quoting from Shaffer v. Heitner, 433 U.S. 186, 204, 97 S. Ct. 2569, 2579 (1977)). Thus, to meet the minimum contacts standards, there must be some act by which Enviroflex purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 1228 (1958). The critical factor in making this determination is whether these "minimum contacts" are established to a degree to which Enviroflex purposely initiates its activity in this state. Customwood Mfg. v. Downey Constr. Co., 102 N.M. 56, 57, 691 P.2d 57, 58 (1984). An example of purposeful availment is where defendant's contacts are attributed to its own actions rather than those to the plaintiff. Here, it was Enviroflex's agent, Lee Technologies, that initiated the contact with Envirco. As previously indicated, Lee, on behalf of Enviroflex and Shin Sung, proposed and encouraged follow-up meetings. It was through those contacts, and subsequent invitations on behalf of Enviroflex and Shin Sung to participate in some type of joint venture or partnership agreement, that the plan to manufacture fan units for Enviroflex and Shin Sung was developed. Additionally, it was through Enviroflex's contacts, through its agent Lee Technologies, that Envirco learned of Enviroflex's and Shin Sung's alleged patent infringement on the Mack 10. The settlement of this dispute included releases for Enviroflex and Shin Sung, payment of royalties to Envirco and, most importantly for this litigation, an agreement that Envirco would manufacture fans for future Enviroflex/Shin Sung projects in the United States and Europe. Thus, Lee's acts, in purposefully availing itself of business activity in the State of New Mexico, are attributed to Enviroflex and Shin Sung.

These contacts constitute purposeful availment as a result of affirmative conduct by Enviroflex or its agent, which promoted the transaction of business within the forum state. Rambo v. Am. Southern Ins. Co., 839 F.2d 1415, 1420 (10th Cir. 1988). Indeed, these contacts ultimately culminate in a contract which forms the basis of the present lawsuit. They are directly related to the cause of action asserted against Enviroflex. Wesley, 678 F. Supp. at 1542.

This purposeful availment requirement was recently discussed by the New Mexico Supreme Court in Sanchez v. Church of Scientology. There, the court stated:

> The purposeful activity requirement assumes that a defendant will not be subject to jurisdiction solely as a result of random, fortuitous, or attenuated contacts. We agree with the Ninth Circuit "that ordinarily `use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'"

Sanchez, 115 N.M. at 664, 857 P.2d at 775.

Here, Envirco alleges that Enviroflex's agents came to New Mexico to engage in a business relationship with it. These initial contacts resulted in numerous national and international trips by Envirco representatives to meet with Enviroflex and Shin Sung. Similarly, Shin Sung and Enviroflex and their representatives sought product information, traveled to New Mexico to inspect Envirco's manufacturing plant, engaged in specific discussions concerning joint ventures and partnerships, and entered into contractual agreements. While the contracts were executed outside of the forum state, the manufacture of fan units contemplated by the parties could occur only at Envirco's manufacturing facility in New Mexico. In furtherance of these proposed projects, there were numerous telephone calls, facsimile transmissions and personal visits, both in and out of the forum state. Shin Sung sent a sample fan to Envirco for its inspection, and Envirco manufactured, in New Mexico, a sample unit

10

which was shipped to Shin Sun in Korea. Finally, Enviroflex submitted a purchase order to Envirco for the first 100 units, which were to be manufactured in New Mexico. There can be no more clear expression of Enviroflex's intent to transact business in this state then its submission of a purchase order to do exactly that. The fact that the contract to provide the 100 units was not performed, or that Enviroflex derived no revenue from its dealings with Envirco, is of no consequence. By transacting business in New Mexico, Enviroflex purposely directed its business activities toward the forum state. Indeed, had Enviroflex believed that Envirco had breached its agreement to provide the 100 test units, or had the units been deficient, Enviroflex could well have availed itself of the right to seek redress against Envirco in a New Mexico court. Had Enviroflex successfully brought an action against Envirco, it would have had the right to utilize court process to enforce its judgment against Envirco's New Mexico assets. The Court determines that Enviroflex's activities in New Mexico far more than random, fortuitous or attenuated contacts. Enviroflex's conduct is sufficient to meet the "minimum contacts" test, and requiring it to respond to claims in a New Mexico court does not offend concepts of fair play or substantial justice. <u>International Shoe</u>. The contacts are sufficient to support both specific and general jurisdiction over Enviroflex. <u>Visarraga</u>.

The Court concludes that Envirco has both pled facts and submitted documents sufficient for the Court to conclude that it has made a *prima facie* showing of jurisdiction. Thus, the Court determines that Enviroflex's motion to dismiss for lack of jurisdiction is not well-taken and the same is hereby denied.

                                                      _/s/ Lorenzo F. Garcia_
                                                      Lorenzo F. Garcia

ATTORNEYS FOR ENVIRCO:                United States Magistrate Judge
David A. Rammelkamp, Esq.
Karl E. Johnson, Esq.
Shari L. Sterud, Esq.
ATTORNEY FOR ENVIROFLEX:
Jonathan W. Hewes, Esq.